IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-08-00329-CV

 

Marrgaret Hiebeler,

                                                                                    Appellant

 v.

 

OCC Construction Corporation,

                                                                                    Appellee

And

 

No. 10-08-00354-CV

 

Margaret Meece and Patrick Meece, 

                                                                                    Appellants

 v.

 

OCC Construction Corporation,

                                                                                    Appellee

 

 



From the 361st District Court

Brazos County, Texas

Trial Court No. 03-001642-CV-361

Consolidated with No.
03-001643-CV-361

 



DISSENT TO SEVERANCE AND REINSTATEMENT ORDER



 

            The Court’s opinion and judgment in
10-08-00329-CV has not issued. On September 18, 2008 we received a notice of
bankruptcy of two of the Appellants.  On October 7, 2008 we acknowledged the
automatic stay due to having received the notice of bankruptcy.  Today we
purport to sever the proceeding on our own motion.  I would not.

            I would inquire of the parties
regarding whether the matter was appropriate for severance, in particular
whether the Appellees’ claims against the Appellants as well as the Appellants’
claims and counterclaims are severable.  Before I vote to attempt to sever the
Appellants, I would request briefing on the issue of severability.  Further, it
appears we may be creating an undesirable course of proceeding because, while
represented by able counsel, none of the parties has sought this Court’s
intervention in this manner.

            Accordingly, I respectfully dissent
from the severance and reinstatement order.








 

 

 

                                                                        TOM
GRAY

                                                                        Chief
Justice

 

Dissent
to Severance and Reinstatement Order delivered and filed October 15, 2008

Publish






t: 0.388889in; margin-right: -0.0625in">      A jury convicted Cicero Jones of the offense of possession of a firearm by a felon. Tex.
Penal Code Ann. § 46.04 (Vernon 1994). It found “true” to an enhancement paragraph and
assessed punishment at eighteen years in prison. Jones appeals on five points. He complains of
the legal and factual sufficiency of the evidence, the State's use of peremptory strikes, a violation
of his right against self-incrimination, and ineffective assistance of counsel. Although we assume
error in the admission of an ATF form into evidence, we find the error harmless. We will affirm
the judgment.
      The State alleged that Jones, a convicted felon, had been in possession of a firearm at the time
he pawned it at Texas Jewelry in Bryan. Jones stipulated to the jury that he had previously been
convicted of possession of cocaine. He had been sentenced to prison and later released on parole. 
SUFFICIENCY OF THE EVIDENCE
      In points one and two, Jones complains that the evidence was legally and factually insufficient
to sustain his conviction. We will briefly review the testimony and evidence adduced at trial.
John Covey
      Covey testified that he was a clerk at Texas Jewelry and Loan on March 21, 1995. He stated
that he “wrote” 40 to 50 loans a day. When a customer pawned an item, Covey “always” obtained
the customer's driver's license and entered that name and address into the computer to print the
pawn ticket. He also compared the driver's license picture with the customer and the driver's
license signature with the signature on the pawn receipt. 
      Covey stated that Jones, a new customer, came into the shop that day to pawn a gun. Covey
checked Jones' driver's license photograph with Jones and it looked like him. Covey completed
a pawn ticket for “Cicero Jordan Jones” which included Jones' driver's license number, height,
sex, eye color, and date of birth, all information taken from the driver's license. Jones signed the
pawn ticket “C. Jones.” Covey compared the signature on the pawn ticket to the signature on the
driver's license and they looked the same. The transaction took ten to fifteen minutes. Covey
testified that he knew the difference between a “real” gun and a toy or fake gun. He identified the
gun Jones pawned as a Belgium Browning .25 Caliber semi-automatic pistol. 
      Covey identified Jones in the courtroom. He testified that Jones had more hair in March 1995. 
He also said he had seen Jones on two other occasions—when Jones returned to pick up the
Browning and when he later pawned another item.
David Weaver
      Weaver, who also worked for the pawn shop, assisted Jones when he redeemed the gun on
April 11. Jones provided his driver's license for identification. Weaver checked the photograph
and signature on the license. Jones signed the pawn ticket, “Cicero Jones.” 
      Weaver stated that any customer redeeming a firearm must complete an Alcohol, Tobacco, and
Firearms form—an “ATF form.” Jones signed the form “Cicero Jones,” and Weaver used his
driver's license to fill in additional information, including Jones' driver's license number. He
described the man who redeemed the gun as a black male about five foot nine. Weaver identified
Jones in the courtroom, although he had previously told the prosecutor that he was not sure he
would be able to identify the person who had redeemed the gun. Weaver stated that by seeing
Jones in the courtroom he was able to remember him. He stated that Jones had more hair when he
redeemed the gun.
legal sufficiency
      Evidence will sustain a conviction if, viewing it in the light most favorable to the verdict, any
rational trier of fact could have found the essential elements of the crime beyond a reasonable
doubt. Lane v. State, 933 S.W.2d 504, 507 (Tex. Crim. App. 1996) (following the standard of
Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2788-89, 61 L.Ed.2d 560 (1979)).
      Jones complains that the State's case is based upon the identification testimony of Covey and
Weaver. He argues that the State did not produce the gun or any fingerprints to corroborate the
witnesses' testimony. 
      Both witnesses identified Jones at trial. Each had compared Jones' driver's license photograph
and signature when he was in the pawn shop. Covey testified that Jones pawned a “real” gun. 
Looking only at the evidence favorable to the verdict, we find the evidence legally sufficient to
sustain the conviction. Id. We overrule point one.
factual sufficiency
      When conducting a factual sufficiency review, we consider all the evidence and set aside the
verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong
and unjust. Clewis v. State, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996).


 Jones contends that
Covey's identification is suspect because Covey assisted 40 to 50 people a day and only dealt with
Jones for ten to fifteen minutes. Jones argues that, prior to trial, Weaver had been uncertain he
could identify Jones. When Weaver identified Jones at trial, Jones was the only black male in the
courtroom.
      Again, both witnesses identified Jones. Covey testified that he compared the photograph and
signature on the driver's license with Jones and the forms used when the gun was pawned. He
recognized Jones when he returned to the shop to redeem the gun. Weaver also compared the
photograph and signature. Covey identified the gun as a Belgium Browning .25 caliber semi-automatic weapon. 
      Looking at all of the evidence, we do not find the verdict so contrary to the overwhelming
weight of the evidence as to be clearly wrong and unjust. Id. We overrule point two.
BATSON CHALLENGE
       Jones' third point argues that he was denied due process and equal protection under the law
when the State struck Ana Pachuca from the venire panel. Jones asserts that Pachuca was struck
on the basis of race in violation of Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d
69 (1986). 
      The prosecutor stated that Pachuca had spoken with a court bailiff during jury selection and
“did not appear to understand” the court's instructions. Pachuca was called to the stand. She
testified that her primary language is Spanish and that she had a “little bit” of difficulty reading
English. The court asked Pachuca to read a sentence in English. The court stated, “Okay. As
long as you have a good command of the English language, you'll be okay. All right?” Pachuca
responded, “ I don't know. I have a little problem for talking in English.” 
      In summarizing her reasons for striking Pachuca, the prosecutor stated that Pachuca had
difficulty in understanding the proceedings, that the bailiff had difficulty understanding Pachuca,
and that the prosecutor herself had difficulty understanding her. Service on the jury would require
her to read a jury charge containing legal information. Further, the prosecutor believed that
Pachuca's difficulty in communicating in English would inhibit her ability to deliberate with other
jurors. Based on these reasons, the court overruled the Batson objection. 
      Because the court ruled on the ultimate question of intentional discrimination, we need not
review the issue of whether the defendant established a prima facie case. Hill v. State, 827 S.W.2d
860, 865 (Tex. Crim. App. 1992). We review the record of the Batson hearing and the voir dire
examination in the light most favorable to the trial court's ruling. Adanandus v. State, 866 S.W.2d
210, 222 (Tex. Crim. App. 1993). We will not disturb that ruling unless it is clearly erroneous. 
Id. Our review includes the racial makeup of the venire, the voir dire examination, the
prosecutor’s explanations, and any rebuttal and impeaching evidence. See Chambers v. State, 866
S.W.2d 9, 23 (Tex. Crim. App. 1993). Absent some evidence rebutting a race-neutral
explanation, we will not disturb the court's finding that the State's explanation is legitimate. Id.
at 25; Pondexter v. State, 942 S.W.2d 577, 581 (Tex. Crim. App. 1996).
      The prosecutor stated race-neutral reasons for striking Pachuca. Counsel's statements about
Pachuca's difficulty in understanding and being understood were not disputed and can be
considered. See Yarborough v. State, 947 S.W.2d 892, 896 (Tex. Crim. App.1997). Having
reviewed the record, we cannot say that the court's determination is clearly erroneous. Adanandus,
866 S.W.2d at 222. We overrule point three.
RIGHT AGAINST SELF-INCRIMINATION
      In his fourth point, Jones argues that the court erred in admitting the ATF form into evidence
over his objection. He claims that the form's admission violated his right against self-incrimination. U.S. Const. amend. V; Tex. Const. art. I, § 10. 
      Title 26, section 5848, of the United States Code provides:
(a) No information or evidence obtained from an application, registration, or records
required to be submitted or retained by a natural person in order to comply with any provision
of this chapter or regulations issued thereunder, shall, . . . be used, directly or indirectly, as
evidence against that person in a criminal proceeding with respect to a violation of law
occurring prior to or concurrently with the filing of the application or registration, or the
compiling of the records containing the information or evidence.
 
26 U.S.C.A. § 5848 (West 1989). Jones argues that the scope of the privilege extends to
prosecutions under federal and state law. United States v. Freed, 401 U.S. 601, 91 S.Ct. 1112,
28 L.Ed.2d 356 (1971). When Jones raised his objection prior to trial, the court overruled his
objection, determining that section 5848 did not apply.
      The first question is whether section 5848 applies to the complained-of form, a question neither
party addresses. State's Exhibit No. 5 is ATF Form 4473. Federal regulations require
pawnbrokers to complete a Form 4473 when a firearm is redeemed. See Huddleston v. United
States, 415 U.S. 814, 816, 94 S.Ct. 1262, 1265, 39 L.Ed.2d 782 (1974). This regulation derives
from the Firearm Owners' Protection Act. 18 U.S.C.A. §§ 921-928 (West 1979 & Supp. 1997);
27 C.F.R. 178.124(a). Section 5848 is part of the National Firearms Act (NFA) in the Internal
Revenue Code. 26 U.S.C.A. §§ 5801-5872 (West 1989 & Supp. 1997). Section 5848 is limited
to information and evidence compiled “in order to comply with any provision of [chapter 53]” of
Title 26. Id. § 5848. Because a weapon may be transferred under the provisions of either Title
18 or Title 26, we will assume section 5848 applies to Jones. 18 U.S.C.A. § 922(s)(1)(A), (E);
26 U.S.C.A. § 5812.
      Section 5848 was enacted in response to Haynes v. United States, 390 U.S. 85, 88 S.Ct. 722,
19 L.Ed.2d 923 (1968). Haynes was prosecuted for unlawful possession of a sawed-off shotgun.
At the time, federal law required the registration of weapons while simultaneously making it a
crime to possess an unregistered weapon. Thus, a person trying to register a weapon in order to
comply with the law necessarily implicated himself as the possessor of an unregistered weapon. 
Haynes successfully argued that the registration law violated his Fifth Amendment right against
self-incrimination by requiring him to furnish potentially incriminating information. Id. at 100,
88 S.Ct. at 732. 
      Section 5848 was designed to prevent registration information from being used “directly or
indirectly” against the applicant in a “criminal proceeding with respect to a violation of law
occurring prior to or concurrently with the filing of the application or registration, or the compiling
of records containing the information or evidence.” 26 U.S.C.A. § 5848; Freed, 91 S.Ct. at 1115.
The State argues that Jones' criminal proceeding is not the type of proceeding to which section
5848 is applicable. It asserts that Jones' case “is in no way similar to the possession of
unregistered firearms” as found in Freed. However, section 5848 states that “no information or
evidence obtained from an application . . .shall . . . be used, directly or indirectly. . . .” The State
sought to use the ATF form to establish that Jones possessed the weapon at the time the ATF
application was completed. Thus the court erred in admitting the document.
      Having determined that the court erred in admitting the document into evidence, we must now
determine whether the error contributed to the conviction or punishment. See Tex. R. App. P.
44.2(a).


 In making that determination, we consider the following six factors:
      1.   the source of the error;
      2.   the nature of the error;
      3.   whether or to what extent the error was emphasized by the state;
      4.   the probable implications of the error;
      5.   how much weight a juror would probably place on the error; and
      6.   whether declaring the error harmless would encourage the state to repeat it with impunity.
See Garcia v. State, 919 S.W.2d 370, 380 (Tex. Crim. App. 1994) (citing Harris v. State, 790
S.W.2d 568 (Tex. Crim. App. 1989)). We do not focus on the propriety of the outcome of the
trial, but on the integrity of the process that led to conviction and punishment. Id.
      State's Exhibit No. 5, the ATF form, contains Jones' name, address, date of birth, sex,
driver's license number, height, eye color, and signature. This same information appeared in
State's Exhibits Nos. 3 and 4—the pawn tickets completed at the time of the loan and the time of
redemption. Jones introduced his driver's license into evidence. His license contained the same
information. Jones' parole certificate was introduced as State's Exhibit No. 2 and contained Jones'
signature. In closing argument, the State urged the jury to compare the signatures on Jones' parole
certificate and driver's license with the signatures on the two pawn tickets and the ATF form. 
      The ATF form contained the identical personal information that had been admitted in three
other exhibits. The State emphasized the form once in closing argument, simultaneously urging
the jury to look at the two pawn tickets. Having isolated the error and all its effects, we cannot say
that a rational trier of fact might have reached a different result if the error and its effects had not
resulted. See Harris, 790 S.W.2d at 588. We overrule point four.
INEFFECTIVE ASSISTANCE OF COUNSEL
      Jones' final point complains that he was denied effective assistance of counsel during the guilt-innocence phase of his trial because counsel allowed the State to introduce an extraneous offense
without objection. Jones argues that State's Exhibits Nos. 1 and 1a, copies of his prior felony
conviction, reference an extraneous offense. Both exhibits state that Jones was sentenced to fifteen
years “to run concurrently with cause no. 15,602.” 
      To prevail on this point, Jones must meet the two-pronged test used to analyze claims of
ineffective assistance of counsel. See Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052,
80 L.Ed.2d 674 (1984); Jackson v. State, 877 S.W.2d 768, 770-71 (Tex. Crim. App. 1994). First,
Jones must show that his trial counsel's performance was so deficient, because she made errors of
such a serious nature, that she was not functioning as the "counsel" guaranteed by the Sixth Amendment. Id. Second, he must demonstrate that the deficient performance so prejudiced his defense
that he was deprived of a fair trial, i.e., that there is a reasonable probability that, but for his
counsel's unprofessional errors, the result of the proceeding would have been different. Id. 
      Jones bears the burden of proving ineffective assistance of counsel. Jackson, 877 S.W.2d at
771. As the reviewing court, we look to the totality of the representation. Butler v. State, 716
S.W.2d 48, 54 (Tex. Crim. App. 1986). We must indulge a strong presumption that counsel's
conduct falls within the wide range of reasonable professional assistance. Jackson, 877 S.W.2d
at 771.
      The State argues that the totality of the representation shows counsel was reasonably effective. 
As part of her trial strategy, counsel admitted that Jones was a convicted felon and attempted in
voir dire to determine the effect of that fact on the potential jurors. Counsel raised valid objections
to the admission of the ATF form, cross-examined the witnesses on their ability to identify Jones,
and argued the defense of misidentification. 
      We have reviewed the entire record. We cannot say that trial counsel's performance was so
deficient that she was not functioning as the “counsel” guaranteed by the Sixth Amendment.
Id.  We overrule point five. 
      We affirm the judgment.
 
                                                                                 BILL VANCE
                                                                                 Justice
 
Before Chief Justice Davis,
          Justice Cummings, and
          Justice Vance
Affirmed
Opinion delivered and filed October 8, 1997
Do not publish