COURT OF APPEALS OF VIRGINIA

Present:  Judges Elder, Fitzpatrick and Annunziata
Argued at Richmond, Virginia


DIANE C. CARTER
                                            OPINION BY
v.   Record No. 2169-96-2        JUDGE ROSEMARIE ANNUNZIATA
                                       NOVEMBER 4, 1997
COMMONWEALTH OF VIRGINIA


        FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                 Donald W. Lemons, Judge

        Matthew T. Paulk, Assistant Public Defender
        (David J. Johnson, Public Defender, on
        brief), for appellant.

        Thomas D. Bagwell, Senior Assistant Attorney
        General (James S. Gilmore, III, Attorney
        General, on brief), for appellee.


        Following a bench trial, Diane C. Carter was convicted of

cable television fraud in violation of Code § 18.2-187.1.  On

appeal, she contends that 47 U.S.C. § 553 preempts Virginia Code

§ 18.2-187.1 and, alternatively, that the evidence was

insufficient to support her conviction.  We affirm.

        Appellant had resided at 2320 Ambrose Street since July

1990.  Continental Cablevision last provided authorized cable

television service at that address in May 1990.  In February

1996, Timothy Stotler, a Continental representative, investigated

the possible unlawful receipt of cable service at appellant's

residence.  During the course of his investigation, Stotler

discovered that the cable line serving appellant's residential

complex had been impermissibly spliced to direct service into

appellant's residence.  Appellant admitted to Stotler that she

had been receiving cable service since July 1990 and that she had not paid for service. She told Stotler that an unknown "cable person" installed service at her residence in 1990 and that this person had provided the cable converter box she used to receive service. Stotler's records indicated, however, that Continental had issued the converter box to another individual, a Continental customer at another address, who was last authorized to use the box in March 1994 and who had not returned it to Continental. Stotler testified that the value of service provided to appellant's address exceeded $200. The trial court found:

> what I have is a disconnect at [appellant's residence]. And I have testimony from the person who is a custodian of [Continental's] records. I have ongoing receipt of cable television service every month, presumably, from the evidence. I think it's easy enough for me to determine from the evidence that this hookup has been there for some time [and that the value of the service exceeded $200].

I.

Appellant first contends that Code § 18.2-187.1 is preempted by 47 U.S.C. § 533 and, thus, that her prosecution and conviction under § 18.2-187.1 is barred.

> The Supremacy Clause of Art. VI of the Constitution provides Congress with the power to pre-empt state law. Pre-emption occurs when Congress, in enacting a federal statute, expresses a clear intent to pre-empt state law, Jones v. Rath Packing Co., 430 U.S. 519 (1977), when there is outright or actual conflict between federal and state law, e.g., Free v. Bland, 369 U.S. 663 (1962), where compliance with both federal and state law is in effect physically impossible, Florida Lime & Avocado Growers, Inc. v. Paul, 373 U.S. 132 (1963), where there is implicit in federal

- 2 -

> law a barrier to state regulation, <u>Shaw v.
> Delta Air Lines, Inc.</u>, 463 U.S. 85 (1983),
> where Congress has legislated
> comprehensively, thus occupying an entire
> field of regulation and leaving no room for
> the States to supplement federal law, <u>Rice v.
> Santa Fe Elevator Corp.</u>, 331 U.S. 218 (1947),
> or where the state law stands as an obstacle
> to the accomplishment and execution of the
> full objectives of Congress.  <u>Hines v.
> Davidowitz</u>, 312 U.S. 52 (1941).

<u>Louisiana Pub. Serv. Comm'n v. FCC</u>, 476 U.S. 355, 368-69 (1986);

<u>see also</u> <u>Pennsylvania v. Nelson</u>, 350 U.S. 497, 503-09 (1956)

(applying preemption to criminal statute).

> Code § 18.2-187.1 provides in part:
> It shall be unlawful for any person
> knowingly, with the intent to defraud, to
> obtain or attempt to obtain . . . cable
> television service by the use of any false
> information, or in any case where such
> service has been disconnected by the supplier
> and notice of disconnection has been given.

If the value of service procured is $200 or more, the crime is

punishable as a Class 6 felony, Code § 18.2-187.1, and, thus,

carries a term of imprisonment of between one and five years or

confinement in jail for not more than twelve months and a $2,500

fine.  Code § 18.2-10(f).  The United States Congress has also

proscribed the unauthorized reception of cable television

service.  <u>See</u> 47 U.S.C. § 553.  The relevant federal crime,

however, is punishable by a fine of not more than $1,000 or

imprisonment for not more than six months, or both.  47 U.S.C.

§ 553(b)(1).  47 U.S.C. § 553(c)(3)(D) provides in part, "Nothing

in this subchapter shall prevent any State . . . from enacting or

enforcing laws, consistent with this section, regarding the unauthorized interception or reception of any cable service."

Appellant contends that 47 U.S.C. § 553 expressly preempts Code § 18.2-187.1 because the two statutes are not consistent as to the level of punishment each respectively carries. Appellant cites no authority, and we have found none, to support such a contention.

Moreover, to the extent that the intention of Congress to preempt Code § 18.2-187.1 must be implied from 47 U.S.C. § 553, appellant's argument fails. There is no conflict between the substance of the activity proscribed by the federal and state law, only its penalty. As such, compliance with both federal and state law is not impossible, and Code § 18.2-187.1 stands not as an obstacle to the accomplishment and execution of the full objectives of Congress, but as a supplement. The federal law does not implicitly contain a barrier to state regulation, and Congress has not legislated comprehensively, thus occupying an entire field of regulation and leaving no room for the States to supplement federal law. To the contrary, Congress expressly provided that the States may proscribe the unauthorized receipt of cable service.

Finally, while both the federal and Virginia statutes proscribe the unauthorized reception of cable television service, they are premised on different principles of substantive criminal law. Code § 18.2-187.1 defines a crime of fraud, while 47 U.S.C.

§ 553 defines a crime of theft.  To the extent the statutes proscribe different conduct, the Supremacy Clause is not implicated.  See generally 1 Wayne R. LaFave & Austin W. Scott, Substantive Criminal Law § 2.15(b) (1986).

## II.

Appellant next challenges the sufficiency of the evidence to support her conviction under Code § 18.2-187.1.

When considering the sufficiency of the evidence on appeal in a criminal case, this Court views the evidence in a light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom.  Higginbotham v. Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975).  The trial court's judgment will not be set aside unless it appears that the judgment is plainly wrong or without supporting evidence.  Code § 8.01-680; Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987).

In the present case, service had been disconnected at 2320 Ambrose Street in May 1990.  Appellant moved into the residence in July 1990 and began receiving cable service thereafter.  The evidence showed that appellant received service for over five and one-half years without paying for it.  The evidence further established that the cable line to appellant's residential complex had been impermissibly spliced to provide service to appellant's residence and that appellant had been receiving service by using an unauthorized converter box.  Appellant's

- 5 -

explanation of the circumstances to Stotler was wholly discredited by Stotler's testimony. Appellant stated she had the converter box installed in 1990. However, the evidence proved that the condition of the copper conductor was inconsistent with exposure to the weather for that period of time. It further established that, although significant interference with television reception in the remaining units of appellant's residential building would have been caused by the type of hook-up used to install appellant's converter box, no complaints from other subscribers had been received. Finally, Stotler testified and business records admitted on the issue corroborated, that the converter box appellant stated she had installed in 1990 was in the possession of another customer until 1994. We find the evidence supports beyond a reasonable doubt the trial court's finding that appellant knowingly and with the intent to defraud, made false communications to Stotler in an attempt to obtain or continue obtaining cable service, valued in excess of $200. We accordingly affirm the conviction.

Affirmed.