COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Felton, Judges Elder and Petty
Argued at Charlottesville, Virginia


LAWRENCE L. HUVER, III

v.        Record No. 0276-08-4

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
JUDGE LARRY G. ELDER
MARCH 10, 2009


FROM THE CIRCUIT COURT OF CULPEPER COUNTY
John R. Cullen, Judge

Kirk T. Milam (The Law Office of Kirk T. Milam, P.L.C., on briefs),
for appellant.

Jennifer C. Williamson, Assistant Attorney General (Robert F.
McDonnell, Attorney General, on brief), for appellee.


Lawrence L. Huver, III (appellant), appeals from his bench trial conviction for possessing

a firearm silencer not registered to him in the National Firearms Registration and Transfer

Record, a federal registry established by federal law, see 26 U.S.C. § 5841 (2006), in violation of

Virginia's Code § 18.2-308.6. On appeal, he contends Code § 18.2-308.6 violates the

Supremacy Clause. He also contends the evidence was insufficient as a matter of law to prove

the silencer was not registered to him.[1] We hold the appeal lacks merit, and we affirm.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Appellant also argues on brief the evidence failed to prove the item was an operational
silencer or that appellant possessed the item. As the Commonwealth correctly points out,
however, this Court rejected both these aspects of the sufficiency claim at the petition stage.
Thus, in this appeal, we do not consider the sufficiency of the evidence to prove these elements
of the offense.

I.

Code § 18.2-308.6 provides "It shall be unlawful for any person to possess any firearm muffler or firearm silencer which is not registered to him in the National Firearms Registration and Transfer Record [(NFRTR)]. A violation of this section shall be punishable as a Class 6 felony." See 1990 Va. Acts., ch. 413 (enacting Code § 18.2-308.6). The NFRTR was created in 1968 when Congress, through a series of amendments to the National Firearms Act of 1934, "set[] forth a comprehensive scheme [for] assessing taxes on importers, manufacturers, and dealers in firearms and provid[ed] a registration scheme for the same." Oefinger v. Zimmerman, 601 F. Supp. 405, 408 (W.D. Pa. 1984). The present federal statutory scheme, referred to as the National Firearms Act of 1968[2] (the Act), see 26 U.S.C. § 5849 (2006), requires registration of certain items defined as firearms, including firearm silencers, and payment of a tax thereon in certain circumstances, e.g. 26 U.S.C. §§ 5821, 5841, 5845 (2006), and it proscribes, *inter alia*, a person's (1) "mak[ing of] a firearm in violation of [the Act]," which requires advance registration, as well as (2) "possess[ion of] a firearm which is not registered to him in the [NFRTR]," 26 U.S.C. §§ 5822, 5861(d), (f) (2006).

A.

CODE § 18.2-308.6 & THE SUPREMACY CLAUSE

The Supremacy Clause

> "provides Congress with the power to pre-empt state law.
> Pre-emption occurs when Congress, in enacting a federal statute,
> expresses a clear intent to pre-empt state law, when there is
> outright or actual conflict between federal and state law, where
> compliance with both federal and state law is in effect physically
> impossible, where there is implicit in federal law a barrier to state

---

[2] Except as noted, infra, the NFRTR and the National Firearms Act, see Gun Control Act of 1968, Pub. L. No. 90-618, § 201, 82 Stat. 1227, have, in all parts relevant to this appeal, remained unchanged since 1968. Appellant was born in 1979. The act of possession upon which his conviction was based occurred on or about February 7, 2007.

regulation, where Congress has legislated comprehensively, thus occupying an entire field of regulation and leaving no room for the States to supplement federal law, or where the state law stands as an obstacle to the accomplishment and execution of the full objectives of Congress."

Carter v. Commonwealth, 25 Va. App. 721, 723-24, 492 S.E.2d 480, 481 (1997) (quoting La. Pub. Serv. Comm'n v. FCC, 476 U.S. 355, 368-69, 106 S. Ct. 1890, 1898, 90 L. Ed. 2d 369, 381-82 (1986) (citations omitted)).

Appellant does not argue that Congress's enactment of the National Firearms Act was intended to preempt *all* state regulation of firearms, only that it preempts "all matter regarding registration . . . and enforcement [under] the National Firearms Act," including the NFRTR. Appellant cites, *inter alia*, a provision of the Act "limit[ing] use of information from the [NFRTR] and applications for registration in criminal proceedings." See 26 U.S.C. § 5848 (2006). Appellant argues that the General Assembly would be free to establish a similar *state* registry and to punish possession of firearms not registered in accordance with *state* registry requirements but that it is not free to proscribe possession of firearms not registered in accordance with *federal* registration requirements. However,

in all pre-emption cases, and particularly in those in which Congress has "legislated . . . in a field which the States have traditionally occupied," we "start with the assumption that the historic police powers of the States were not superseded by the Federal Act unless that was the clear and manifest purpose of Congress."

Medtronic, Inc. v. Lohr, 518 U.S. 470, 485, 116 S. Ct. 2240, 2250, 135 L. Ed. 2d 700, 715 (1996) (quoting Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230, 67 S. Ct. 1146, 1152, 91 L. Ed. 2d 1447, 1459 (1947)). The law at issue here, the National Firearms Act of 1934, as amended, was enacted *to assist the states* with the effort to deal with the "emergence of organized crime as a major national problem" and "[r]epresented the first major federal attempt

to regulate firearms," Lomont v. O'Neill, 285 F.3d 9, 11 (D.C. Cir. 2002), an area traditionally falling under state police powers.

Appellant concedes federal law does not *expressly* preempt Code § 18.2-308.6, but he contends that code section conflicts with federal law because the penalties for violating the state and federal statutes are different. However, here, as in Carter, "[a]ppellant cites no authority, and we have found none," to support the claim that federal and state statutes conflict merely because they prescribe different penalties. Carter, 25 Va. App. at 725, 492 S.E.2d at 481. Thus, we conclude that no *direct* conflict exists between the federal and state law.

Further, the mere fact that Congress enacted legislation requiring the registration of certain firearms in the NFRTR and proscribed a penalty for possessing firearms not properly registered thereunder does not *implicitly* preempt any state laws also proscribing the possession of firearms not registered under the NFRTR. See Wayne R. LaFave & Austin W. Scott, Jr., Substantive Criminal Law § 3.6(b), at 258 (2d ed. 2003) (noting it is not unusual for state and federal statutes to punish identical or substantially identical conduct under the theory that the statutes do not conflict and Congress did not intend to make federal law exclusive). California v. Zook, 336 U.S. 725, 69 S. Ct. 841, 93 L. Ed. 1005 (1949), for example, involved a challenge to a California statute that prohibited "the sale or arrangement of any transportation over the public highways of the State if the carrier ha[d] no permit from the Interstate Commerce Commission." The state statute had "substantially the same provision" as "[t]he federal Motor Carrier Act." Id. at 726-27, 69 S. Ct. at 842, 93 L. Ed. at 1008. In rejecting the Supremacy Clause challenge, the Court noted "there is no conflict in terms, and no possibility of conflict, for the state statute makes federal law its own in this particular." Id. at 735-38, 69 S. Ct. at 846-48, 93 L. Ed. at 1012-14.

The existence of 26 U.S.C. § 5848 also does not implicitly preempt Code § 18.2-308.6.

That federal statute, first enacted in 1968, provides as follows:

> (a) General Rule.  No information or evidence obtained from an application, registration, or records required to be submitted or retained by a natural person in order to comply with any provision of this chapter [establishing the NFRTR] or regulations issued thereunder, shall, except as provided in subsection (b) of this section, be used, directly or indirectly, as evidence against that person in a criminal proceeding with respect to a violation of law occurring prior to or concurrently with the filing of the application or registration, or the compiling of the records containing the information or evidence.
>
> (b) Furnishing False Information.  Subsection (a) of this section shall not preclude the use of any such information or evidence in a prosecution or other action under any applicable provision of law with respect to the furnishing of false information.

26 U.S.C. § 5848 (2006) (enacted by the Gun Control Act of 1968, Pub. L. No. 90-618, § 201, 82

Stat. 1227, 1232).  The Supreme Court has further recognized that "as a matter of

[administrative] practice," "[this] information in the hands of the Internal Revenue Service . . . is

not available to state or other federal authorities."  United States v. Freed, 401 U.S. 601, 605-06,

91 S. Ct. 1112, 1116, 28 L. Ed. 2d 356, 360 (1971).

Congress enacted 26 U.S.C. § 5848 as part of its effort to address the Court's earlier

decision in Haynes v. United States, 390 U.S. 85, 100-01, 88 S. Ct. 722, 732, 19 L. Ed. 2d 923,

934-35 (1968), which had held that provisions of the Act allowing the sharing of registration

information with state, local, and other federal officials violated the applicant's Fifth

Amendment right against self-incrimination.  Freed, 401 U.S. at 602-04 & n.1, 91 S. Ct. at 1115

& n.1, 28 L. Ed. 2d at 358-59 & n.1.  Thus, Congress's enactment of 26 U.S.C. § 5848 does not

indicate an intent by Congress to preempt state statutes proscribing the possession of firearms not

registered under the NFRTR.  Although, in practical effect, the provisions of § 5848 make it

harder for a state to prove a failure to register under the NFRTR, see infra Part I.B., neither

§ 5848 nor the related administrative practice recognized in Freed prevents a state from offering evidence, as it did in appellant's case, to prove that an application was *not* filed, as long as the state does not seek to do so through an examination of the registration information actually contained in the NFRTR. Thus, given the events surrounding the passage of § 5848, we conclude its enactment does not constitute an implicit indication of federal preemption of the offense prescribed in Code § 18.2-308.6.

Finally, the federal regulations adopted pursuant to the Act have provided as follows since 1971:

> Special tax stamps [provided to those who register under the Act] are merely receipts for the tax. Payment of tax under Federal law confers no privilege to act contrary to State law. One to whom a special tax stamp has been issued may still be punishable under a State law prohibiting or controlling the manufacture, possession or transfer of firearms.

36 Fed. Reg. 14,256 (Aug. 3, 1971) (codified at 27 C.F.R. § 179.52); 40 Fed. Reg. 16,835 (Apr. 15, 1975); 66 Fed. Reg. 3,752 (Jan. 24, 2003) (codified at 27 C.F.R. § 479.520). Although Congress has amended various provisions in Chapter 53 of Title 26 on at least two occasions since then, see Tax Reform Act of 1976, Pub. L. No. 94-455, § 1906(b), 90 Stat. 1520, 1834-35; Firearms Owners' Protection Act, Pub. L. No. 99-308, § 109, 100 Stat. 449, 460 (1986), it has taken no steps to counteract the effects of this regulation. Cf. Weathers v. Commonwealth, 262 Va. 803, 805, 553 S.E.2d 729, 730 (2001) ("When the General Assembly acts in an area in which one of its appellate courts already has spoken, it is presumed to know the law as the court has stated it and to acquiesce therein, and if the legislature intends to countermand such appellate decision it must do so explicitly.").

Thus, we conclude that nothing in the Act preempts the Commonwealth from also proscribing possession of weapons not registered in the NFRTR in compliance with the Act.

B.

SUFFICIENCY OF THE EVIDENCE

Appellant challenges both the trial court's denial of his motion to strike at the close of the Commonwealth's case-in-chief and the sufficiency of all the evidence to support his conviction. However, it is well settled that when a defendant chooses to present evidence after the denial of a motion to strike the Commonwealth's evidence, he thereby "waives his right to stand upon such a motion." Spangler v. Commonwealth, 186 Va. 436, 438, 50 S.E.2d 265, 266 (1948). As the Supreme Court recognized in Spangler, a plaintiff's case "may be strengthened by the defendant's evidence," and when a defendant again challenges the sufficiency of the evidence after presenting his own case, "the court must consider the entire record in reaching its conclusion." Id.; see also White v. Commonwealth, 3 Va. App. 231, 233, 348 S.E.2d 866, 867 (1986). Thus, when appellant chose to present evidence in his own behalf, he waived the right to stand on his motion to strike the Commonwealth's evidence, and we consider only his challenge to the sufficiency of the evidence as a whole.

In reviewing the sufficiency of the evidence as a whole on appeal, we view it in the light most favorable to the Commonwealth, granting to the evidence all reasonable inferences fairly deducible therefrom. E.g. Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987). "Circumstantial evidence is as competent and is entitled to as much weight as direct evidence, provided it is sufficiently convincing to exclude every reasonable hypothesis except that of guilt." Coleman v. Commonwealth, 226 Va. 31, 53, 307 S.E.2d 864, 876 (1983). In its role of judging witness credibility, the fact finder is entitled to disbelieve, in whole or in part, the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt. Speight v. Commonwealth, 4 Va. App. 83, 88, 354 S.E.2d 95, 98 (1987) (en banc); see Tarpley v. Commonwealth, 261 Va. 251, 256-57, 542 S.E.2d 761, 764 (2001) (noting the fact

that an accused lied provided a basis for rejecting the accused's testimony but was not substantive evidence of guilt).

As Code § 18.2-308.6 implies, the requirement of the Act that specified firearms be registered in the NFRTR expressly includes "any silencer" as defined in 18 U.S.C. § 921 (2006), see 26 U.S.C. § 5845(a)(7) (2006), which is "any device for silencing, muffling, or diminishing the report of a portable firearm, including any combination of parts, designed or redesigned, and intended for use in assembling or fabricating a firearm silencer or firearm muffler, and any part intended only for such use in such assembly or fabrication," 18 U.S.C. § 921(a)(24). See Gun Control Act of 1968, Pub. L. No. 90-618, § 201, 82 Stat. 1227, 1230 (including within the NFRTR's definition of "firearm" "a muffler or a silencer for any firearm whether or not such firearm is included within this definition"); see also Firearms Owners' Protection Act, Pub. L. No. 99-308, § 101(6), 100 Stat. 449, 451 (1986) (amending 18 U.S.C. § 921(a) and 26 U.S.C. § 5845(a)(7) to add the current definition of "silencer" to Title 18 and incorporate it into the Act in Title 26). "The term 'make,' and the various derivatives of such word," as defined in the NFRTR, "include[s] manufacturing (other than by one qualified to engage in such business under this chapter), putting together, altering, any combination of these, or otherwise producing a firearm." 26 U.S.C. § 5845(i) (2006); 26 U.S.C. § 5845(i) (1976).

With regard to registration, the Act provides as follows:

> No person shall make a firearm unless he has (a) filed with the Secretary a written application, in duplicate, to make and register the firearm on the form prescribed by the Secretary; (b) paid any tax payable on the making and such payment is evidenced by the proper stamp affixed to the original application form; (c) identified the firearm to be made in the application form in such manner as the Secretary by regulations may prescribe; (d) identified himself in the application form in such manner as the Secretary by regulations may prescribe, except that, if such person is an individual, the identification must include his fingerprints and his photograph; and (e) obtained the approval of the Secretary to

> make and register the firearm and the application form shows such
> approval.

26 U.S.C. § 5822 (2006); see 26 U.S.C. § 5822 (1970) (using identical language except that the phrase "or his delegate" appeared after the word "Secretary" and was struck by the 1976 amendments, Tax Reform Act of 1976, Pub. L. No. 94-455, § 1906(b), 90 Stat. 1520, 1834). The Act also requires that "anyone making a firearm shall identify each firearm . . . made by serial number which may not be readily removed, obliterated or altered, the name of the . . . maker, and such other identification as the Secretary may by regulations prescribe."  26 U.S.C. § 5842(a) (2006); 26 U.S.C. § 5842(a) (1976).

The regulations applicable since 1978 have required that one seeking to make a firearm shall file with the Director of ATF "a written application on Form 1 (Firearms), Application to Make and Register a Firearm."  27 C.F.R. § 479.62 (2008); 27 C.F.R. § 179.62 (1978).  In keeping with the applicable statutes, if the applicant is an individual, that application must include both a photograph of the applicant and his fingerprints on "two properly completed FBI Forms FD-258 (Fingerprint Card)."  27 C.F.R. § 479.63 (2008); see 27 C.F.R. § 179.63 (1978) (requiring only that fingerprints "must be clear for accurate classification and should be taken by someone properly equipped to take them"); 53 Fed. Reg. 10,509 (Mar. 31, 1988) (Treasury decision ATF-270 adding specific reference to FBI fingerprint forms).  The application must include the certification of "the local chief of police, sheriff of the county, head of the State police, State or local district attorney or prosecutor, or such other person who in a particular case [is] acceptable to the Director."  27 C.F.R. § 479.63 (2008); see 27 C.F.R. § 179.63 (1978) (listing United States Attorney and marshal and not listing state prosecutor).  That official's certificate is required to "state that the certifying official is satisfied that the fingerprints and photograph accompanying the application are those of the applicant and that the certifying official has no information indicating that possession of the firearm by the maker would be in

violation of State or local law or that the maker will use the firearm for other than lawful purposes." 27 C.F.R. § 479.63 (2008); see 27 C.F.R. § 179.63 (1978). Once the firearm has been authorized and made, the maker must "legibly identify" the item by "conspicuously" placing on the item both a serial number and "the name" of the maker. 27 C.F.R. § 479.102(a) (2008); see 27 C.F.R. § 179.102 (1978).

Here, it is undisputed that appellant made the PVC item the trial court found to be a silencer. When appellant was asked at trial if he "ever submitted an application to the ATF to register [the item] as a silencer," he responded, "In the state of Virginia, no." Additional evidence established that appellant moved to Virginia in late 2001 and had resided in Virginia since that time. He met his wife, Ginger Huver, in 2002 after moving to Virginia and married her in approximately 2003. The trial court relied on evidence that the rifle to which the silencer was attached "was purchased when Ms. Huver was present," and on that basis, the court concluded the evidence went "well beyond what's necessary to find [appellant] guilty beyond a reasonable doubt" on the charge of possessing an unregistered silencer.

Even assuming the evidence was sufficient to prove appellant made the silencer *after* purchasing the rifle, the evidence was nevertheless insufficient to prove appellant acquired the rifle after he married Mrs. Huver in 2003. Mrs. Huver testified she "[did not] remember when [they] bought the gun" and she only "guess[ed] [it was their] gun" because they were married, making the firearm "marital property." She testified, "My children have shot the .22. . . . On a farm at Cannes. . . . A couple of years ago." Thus, Mrs. Huver's testimony established appellant had owned the gun two years prior to his October 2007 trial but did not establish whether he acquired it before or after their meeting in 2002 and marriage in 2003, both of which took place in Virginia.

- 10 -

Nevertheless, the evidence, viewed in the light most favorable to the Commonwealth, was sufficient to prove appellant's homemade PVC silencer was not registered in the NFRTR. Both the applicable statutes and regulations and the testimony of several of the Commonwealth's witnesses established that, under the NFRTR, the maker of the firearm is responsible for completing the application in duplicate, obtaining the signature of one of the law enforcement officers listed in the regulations, and then submitting the application to the Director of ATF himself. The applicant himself is required to attach to the application "two properly completed FBI forms FD-258 (Fingerprint Card)" before submitting it to the Director. The applicant is also required to display both a serial number and his name on the item after he has made it.

Here, appellant testified evasively regarding whether he had ever registered the silencer in the NFRTR, stating first, "I do believe I possibly have," and then, "I don't recall." When the prosecutor inquired, "[W]ere you ever fingerprinted and sent an application to the ATF with your fingerprints?" he responded, "I was fingerprinted several times while working in the capacity of the Fairfax and Culpeper County sheriff's office and the department of corrections." The prosecutor then inquired, "Okay, did you ever send any of that to the ATF?" and appellant responded, "Me, personally? I don't believe so." This evidence supports a finding that appellant never submitted to ATF the necessary application and supporting documentation, including fingerprints, to register the silencer.

Appellant's negative response to this question, coupled with his admission that he personally made the silencer with PVC pipe that he may have had in his garage, the absence of his name in a conspicuous location on the silencer as required by the federal Act, and the fact that when he was taken before the magistrate on the felony charge of possessing an unregistered firearm silencer, he claimed as a defense only that the firearm did not work and not that the

silencer was registered, provided sufficient evidence to support his conviction for violating Code § 18.2-308.6.

II.

For these reasons, we hold Code § 18.2-308.6 does not violate the Supremacy Clause and that the evidence was sufficient as a matter of law to prove the silencer was not registered to appellant as required by that code section.  Thus, we affirm appellant's conviction.

<u>Affirmed.</u>